**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

MAYFLOWER TRANSIT, INC.        :        CIVIL ACTION
and LOUDERBACK WORLDWIDE :
MOVING                         :        NO.  02-CV-2702
                   Plaintiffs  :
                               :
        vs.                    :
                               :
HOUSEHOLD MOVERS SERVICES:
                   Defendant   :

_____**ORDER**_____

        AND NOW, this _____ day of _____ 2003,

it is hereby

**ORDERED** and **DECREED**

that Defendant Household Movers Services' Motion for Summary Judgment is

hereby granted, and all of Plaintiffs' claims against Defendant Household Movers

Services are hereby dismissed with prejudice.

                        BY THE COURT:


                        _____

                                                        J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

MAYFLOWER TRANSIT, INC.   :     CIVIL ACTION
and LOUDERBACK WORLDWIDE :
MOVING                :     NO.  02-CV-2702
           Plaintiffs    :
                      :
    vs.              :
                      :
HOUSEHOLD MOVERS SERVICES:
          Defendant    :

**DEFENDANT, HOUSEHOLD MOVERS**
**SERVICES',  MOTION FOR SUMMARY JUDGMENT**

_____Defendant, Household Movers Services (hereinafter "Household") by its

attorneys, Deasey, Mahoney & Bender, Ltd., hereby motions this Court for

summary judgment pursuant to Federal Rule of Civil Procedure 56 (c) and, in

support thereof, avers as follows:

    1.     On May 6, 2002, Plaintiffs filed a Civil Action Complaint against

Defendant Household for **contribution, indemnity and unjust enrichment**, in

connection with Plaintiffs settlement of an underlying lawsuit filed against

Mayflower Transit, Inc. by the Trustees of the University of Pennsylvania, and

Richard L. Tannen, M.D., et al.  See copy of Plaintiffs' Complaint in the instant

matter, attached hereto and marked as Exhibit "A," as well as a copy of the

underlying Complaint filed by the Trustees of the University of Pennsylvania, et

al. against Mayflower Transit, Inc., attached hereto and marked as Exhibit "B."

2.     The underlying Complaint, filed on or about February 13, 1997, which serves as the basis for the instant lawsuit, concerned a lawsuit brought by the Trustees of the University of Pennsylvania and Richard L. Tannen, M.D., et al., to recover money damages against Mayflower for damages and losses to Dr. Tannen's moved household goods, resulting from Mayflower's handling of the property when it was moved coast to coast, from Los Angeles to the Philadelphia area in July of 1995.

3.     Plaintiffs in the underlying lawsuit (see Exhibit "B"), including the Trustees of the University of Pennsylvania and Dr. Richard Tannen, et al. requested damages against Mayflower in the amount of:

    (a)     $76,166.66 representing contract costs paid to Mayflower for the move;

    (b)     compensatory damages to Dr. and Mrs. Tannen and Interior Design in the amount of $490,000;

    (c)     lost profits suffered by Interior Design in excess of $140,000;

    (d)     as well as punitive damages.

4.     The underlying Complaint (see Exhibit "B") asserted that prior to agreeing to the move of their goods, the Tannen customers requested, and Mayflower agreed, that Mayflower had climate-controlled storage facilities, and

that the Tannens' property would be safely stored in climate-controlled conditions until such time as the re-decoration of the Tannen home in the Gladwyne, PA, was complete.

5.    Plaintiffs in the underlying lawsuit (see Exhibit "B") alleged that on or about July 25, 1995, representatives of Mayflower and Louderback packed the Tannens' property in Los Angeles, and thereafter transported it to the East Coast in two Mayflower moving vans.  When the moving vans reached the East Coast, the Tannens were told by Mayflower that one of the moving vans would be taken to a Mayflower location in King of Prussia, Pennsylvania, where it would be safely stored in a climate-controlled environment until such time as the home was ready.

6.    On or about March 1, 1996, Mayflower delivered the moving van to the Tannens in which most of the Tannen goods had <u>allegedly</u> been stored in a safe environment.  Upon delivery, Dr. and Mrs. Tannen refused delivery of the moving van, claiming that most of their property contained therein had been severely damaged by rusting, mold, mildew and humidity, etc., as the result of exposure to severe changes in temperature.  See Exhibit "B," **§ 44.**

7.    When the delivery was rejected on March 1, 1996, Plaintiffs learned for the first time that, without their knowledge or authorization, Mayflower had

not stored the moving van in question in a safe, climate-controlled environment. Rather, as Discovery in this case has shown, the moving van in question was actually parked on an outside lot in King of Prussia, Pennsylvania through the severe winter (and blizzard) of 1996. See Exhibit "B," **§ 54**.

8.    On April 30, 1997, Mayflower filed an Answer with Affirmative Defenses to the underlying Complaint, and nowhere in this answer, nor in the 16 affirmative defenses listed, did Mayflower assert that any of the claimed damages arose from the negligence of any named or yet unnamed third parties, such as Household Movers Services, the defendant named in the instant action.

9.    The underlying claim of the Trustees of the University of Pennsylvania and Dr. Richard L. Tannen, M.D., et al. against Mayflower was eventually settled **on or before October 30, 1997.**

10.    Mayflower retained the services of an independent insurance adjuster, Joseph Conte of Joe Conte & Company, to assist in the resolution of the underlying claim of the Tannens. See N.T. of Joseph Conte at pp. 10-15, attached hereto and marked as Exhibit "C." Joseph Conte also testified that he allegedly learned of a subrogation case by Mayflower against Louderback for the first time in approximately September of 2002.

11.    Joseph Conte further testified in deposition that he first learned of Household Movers Services through information obtained through Mayflower or Louderback (see N.T. of J. Conte at p. 30), but further testified that in his **first report** to St. Paul Fire & Marine Insurance Company concerning the Tannens claim (insurance carrier for Mayflower) dated 5/9/96, that Mr. Conte had ascertained through conversations with Louderback Transportation, that packing materials used in California for the Tannen shipment had green lumber, which was moist, and which caused mildew to develop on the padding and furniture while the goods were in storage for several months, when the contents went through extreme temperature changes.  See first report of Joe Conte & Company dated 5/9/96, attached hereto and marked as Exhibit "D."  Mr. Conte has further acknowledged that the word subrogation means: a possibility for recovery for the damages paid out by St. Paul Insurance Company due to the fault of another party, i.e., in this case, Household Movers Services.

12.    Joseph Conte's **third report** to St. Paul Insurance Company (the carrier for Mayflower), discusses Mayflower's retention of Household Movers of Ridgewood, New Jersey to pack Dr. and Mrs. Tannens' items for shipment across the country and Mr. Conte again makes reference to Household's "apparently using green lumber, which lead to the mildew situation."  See copy of Joseph

Conte's third report dated June 18, 1996, attached hereto and marked as Exhibit "E".

13.    Joann Carberry, the former Claims Manager of the Mayflower and Louderback Claims Department in King of Prussia in 1995, was deposed recently, and testified that she first learned of a problem relating to the Tannen shipment **as early as 1995**, and further that she learned that one of the moving van trailers upon delivery to the Tannen household in Gladwyne, Pennsylvania was refused by the Tannens on 3/1/96, due to a problem with mold and mildew damage to the contents of the trailer. See N.T. of Joann Carberry at pp. 9-30 attached hereto and marked as Exhibit "F."

14.    Joann Carberry further testified that she was told by the President of Louderback/Mayflower at the time, George Smith, concerning this damaged shipment, that he felt the wooden crates used in the shipment had been manufactured from green wood and the moisture contained in the crates created moisture within itself. (See N.T. of J. Carberry at pp. 25-31.) Joann Carberry also testified that George Smith related his theory that one of the two theories of the source of the moisture and mold inside the trailer being constructed from green wood was related by George Smith to her within days, or certainly within the **first**

**couple weeks of March in 1996** at the time the shipment was refused on 3/1/96

(see N.T. of J. Carberry).

15.    Joann Carberry, as head of the Claim Department at Mayflower, also

testified that she herself never had any discussions with the company who

provided the wooden crating.  (See N.T. of J. Carberry, p. 31.)

16.    On March 7, 1996, a buyer, Carol Brandt from the University of

Pennsylvania Purchasing Department wrote to George Smith, the President of

Mayflower Transit c/o Louderback Moving Systems, confirming a conversation

with Gary Louderback of the moving company on March 4, 1996 concerning the

Tannens' move, whereby Mr. Louderback acknowledged that Mayflower Transit

was clearly liable, and would assume full responsibility for all damages and

problems for the move of Dr. and Mrs. Tannen.  See correspondence from Carol

Brandt dated 3/7/96, attached hereto and marked as Exhibit "G."

17.    On April 25, 1996, an unidentified individual from the St. Paul

Property & Liability of Ohio wrote a letter to Nadine Stark of the St. Paul Fire &

Marine Insurance Company in Plymouth Meeting, Pennsylvania ,concerning the

Tannen claim, stating that after the transporting of the home's contents, "our

insured was instructed to place the items in a long term storage facility . . . but

instead the insured kept the items in a short term storage . . . leaving the

7

transported items in the trailers they had been transported in, in an open area, until further notice. During the time, under these storage conditions, the home furnishings were exposed to moisture, from outside precipitation, which resulted in the items sustaining a large amount of mildew and dampness damage." See first page only of a letter from unidentified author from St. Paul Property & Liability Insurance, addressed to Nadine Stark of St. Paul Fire & Marine Insurance Company dated 4/25/96, (supplied to Defendant by Mayflower in Discovery), attached hereto and marked as Exhibit "H."

18.    On October 28, 1996, the President of Household Movers Services faxed a letter to Joseph Conte, Adjuster, concerning the claim of Dr. Tannen, writing apparently in response to a **Joseph Conte letter of October 17, 1996.** Mr. Walsh stated that Household utilizes only top quality spruce lumber for performing crating services, and that any mildew damage which occurred was the result of the movers at either the origin or destination point in allowing the crates to get wet. Mr. Walsh suggested that Mr. Conte pursue this matter with the movers who handled the shipment, who apparently allowed the wet household goods to be placed in storage containers. There was no further contact or claim made by Mayflower against Household until the instant lawsuit was commenced

in May of 2002, some 6 years later. See Household Movers Services letter dated 10/28/96, attached hereto and marked as Exhibit "I."

19.    On **May 14, 1996**, Thomas A. Kuhns, Jr., retained as a **forensic liability expert** on behalf of Mayflower Transit in the underlying claim of the Tannens, prepared an **expert report** for MSS Furniture, an agent of Mayflower Transit.  Dr. Kuhns' "professional opinion" on page 3 of that report stated that the wooden crates used in the Tannen shipment "were constructed from wet lumber which resulted in the direct mildew growth and odor on these crates and also resulted in the residual odor and contamination of other items in the shipment . . . this is not to imply that they (the crates) were made from green wood, as the mildew growth and damage level on the crates and cardboard liners was too severe for this to have been caused simply by green wood."  See Kuhns report of 5/14/96, attached hereto and marked as Exhibit "J."

20.    From a review of the exhibits attached hereto, it is clear that the true subrogor, or party in interest in this subrogation claim, **St. Paul Insurance Company**, the insurance carrier for Mayflower Transit at the time of the Tannen loss, **was first aware of a possible claim against Household Movers Services in early March of 1996**, and that the present litigation by Mayflower v. Household, was not commenced until May 6, 2002, when the instant Complaint was filed,

9

**more than six years** (Emphasis Added) after Mayflower, and/or their principal,

St. Paul Insurance Company, first had knowledge, including an expert opinion

from West Interior Services dated May 14, 1996, six years before Plaintiffs saw fit

to file the instant subrogation claim against Household Movers Services.   St.

Paul's action in the instant case is nothing more than a subrogation claim for the

rights of its insured, Mayflower Moving and Storage.

21.     St. Paul's underlying claim for contribution or indemnity actually

accrued when the underlying case brought by the University of Pennsylvania and

the Tannens against Mayflower was dismissed on October 30, 1997.

22.     In Plaintiff Mayflower's instant subrogation action filed on May 6,

2002, against defendant, Household, Mayflower filed a Three Count Civil action

seeking Contribution, Indemnity and Unjust Enrichment.

23.      Under Pennsylvania law, an action upon a contract, either implied or

express, must be commenced within four years of the breach of that contract.  See

42 Pa. C.S.A. §5525.

24.     Since Plaintiff, Mayflower Transit, Inc. and/or the subrogor in

interest, St. Paul Insurance Company, had knowledge of the mold and mildew

situation and the claimed involvement or responsibility of Household Movers

Services as being the cause of the problem as early as March/May 1996, Plaintiffs'

failure to institute the instant Complaint against Defendant Household Movers

Services must be dismissed in its entirety, as untimely, for failure to comply with

the applicable four year statute of limitations.

WHEREFORE, Defendant Household Movers Services respectfully

requests that summary judgment be granted in favor of Defendant Household

Movers Services, and that all of Plaintiffs' claims against Household Movers

Services be dismissed with prejudice.

Respectfully submitted,

**DEASEY, MAHONEY & BENDER, LTD.**


BY:_____
          JOHN M. DONAHUE, ESQUIRE
          Attorney for Defendant,
          Household Movers Services
          I.D. No. 27268
          1800 J.F.K. Boulevard, Suite 1300
          Philadelphia, PA 19103
          215-587-9400

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| MAYFLOWER TRANSIT, INC. | : | CIVIL ACTION |
| and LOUDERBACK WORLDWIDE | : | |
| MOVING | : | NO.  02-CV-2702 |
| Plaintiffs | : | |
| | : | |
| vs. | : | |
| | : | |
| HOUSEHOLD MOVERS SERVICES: | | |
| Defendant | : | |

**MEMORANDUM OF LAW OF DEFENDANT,**
**HOUSEHOLD MOVERS SERVICES, IN SUPPORT**
**OF THEIR MOTION FOR SUMMARY JUDGMENT**

**I.    FACTUAL BACKGROUND**

On February 13, 1997, the Trustees of the University of Pennsylvania and

Richard L. Tannen, M.D., et al. brought a lawsuit against Mayflower Transit, Inc.,

et al. to recover subrogation damages and other property losses allegedly sustained

as a result of Mayflower's move of the Tannen goods from Los Angeles to the

Philadelphia area in July of 1995.  The underlying claim of the University of

Pennsylvania and Dr. Richard L. Tannen, M.D., et al. against Mayflower was

eventually settled on or about October 30, 1997.  An underlying lawsuit was

closed in accordance with Rule 41.1(b) indicating that the parties in that case had

advised the Court that the case had been settled.  See copy of docket entries for underlying case marked as Exhibit "K."

For purposes of this argument,  the underlying  case had to have been settled prior to October 30, 1997 (see Exhibit "K"),therefore  the instant subrogation case was not filed by Mayflower with the Court until May 6, 2002, more than 4½ years later.  As a result, Defendants maintain that Plaintiffs' instant claim for subrogation or contribution, is time barred by the applicable four year statute of limitations applicable to contracts implied in law.  42 Pa. Cons. Stat. Ann. § 5525(4) (Purdons 1981).

Discovery has revealed that the independent adjusting company adjuster, Joseph Conte, who investigated this loss for Mayflower, advised Mayflower as early as his first report to St. Paul Fire and Marine Insurance Company (Subrogor in Interest) concerning this loss, that the packing materials used in California for the Tannen shipment, allegedly had green, moist lumber, which allegedly caused mildew to develop on padding and furniture while the goods were in storage for several months when the contents went through extreme temperature changes.  See Exhibit "D."  Joseph Conte's third report to St. Paul Insurance Company dated June 18, 1996 states that Household Movers (instant Defendant) "apparently used

green lumber, which lead to the mildew situation," which developed in the Tannen shipped goods.

Joanne Carberry, a former Claims Manager of Mayflower/Louderback North American Claims Department testified that George Smith, President of Mayflower/Louderback, related his theories regarding the source of the moisture/mold inside the Tannen trailer resulting from green lumber, certainly within the first couple weeks of March in 1996, shortly after the time when the Tannen shipment was refused by their customer, Dr. Tannen, on March 1, 1996. See Exhibit "F," pp. 25-31.  On October 17, 1996, Mr. Conti wrote a letter to the President of Defendant Household Movers Services concerning the Tannen claim, to which the President of Household Movers responded that any claimed mildew/moisture damage which occurred as a result of this move resulted from movers at either the origin or destination point allowing the wooden crates to get wet.  See Exhibit "I."  After this letter in 1996, there was no further contact or claim asserted by Mayflower against Household Movers Services until this instant lawsuit was commenced in May of 2002, some six years later.

## II.    LEGAL ARGUMENT

### A.    Standard for Summary Judgment

Summary judgment is proper under Fed. R. Civ. P. 56(c), if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Katz v. Aetna Casualty and Surety Co., 972 F.2d 53, 55 n. 5 (3d Cir. 1992).  The moving party bears the initial burden of identifying the absence of a genuine issue of material fact but need not refute the non-moving party's claim. The non-moving party then has the burden of going beyond the pleadings and producing specific facts indicating that there is a genuine issue for trial.  If it fails to do so, summary judgment will be granted in favor of the moving party.  Celotex Corp. v. Catrett, 477 U.S. 317, at 323-324, 106 S. Ct. 2548, 2552 (1986).  The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury of whether it is so one-sided that one party must prevail as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252, 106 S. Ct. 2505, 2512 (1986).

In the instant matter, it is clear that Defendant, Household Movers Services, is entitled to summary judgment as a matter of law.

In the instant Civil Action Complaint filed against Defendant Household by Mayflower, et al.,   Plaintiffs in this subrogation action have claimed damages for contribution, indemnity and unjust enrichment suffered by Plaintiffs by virtue of their settlement of an underlying lawsuit filed against Mayflower Transit, Inc. by the University of Pennsylvania and Richard L. Tannen, M.D., et al. (see Exhibit "A").

An action for contribution or indemnity is most properly characterized as an action based upon a contract which is implied by law.  See General Accident Fire & Life Assur. Corp. v. I.T.T. Gen'l Corp., No. 88-6505, 1989 WL 73707, *3 (E.D.Pa. June 30, 1989), aff'd mem., 893 F.2d 1329 (3d Cir.1989), citing Svetz v. Land Tool Co., 355 Pa. Super. 230, 238, 513 A.2d 403, 407 (1986) (contribution is enforcement of equitable duty), appeals denied, 515 Pa. 581, 527 A.2d 542, 515 Pa. 584, 527 A.2d 544 (1987); Thermo King Corp. v. Strick Corp., 467 F.Supp 75, 77 (W.D. Pa.) (due to contractual nature, indemnity claim governed by statute of limitations applicable to contracts), aff'd, 609 F.2d 503 (3d Cir. 1979).  In Pennsylvania National Mutual Casualty Insurance Co. v. Nicholson Construction Co., 374 Pa. Super. 13, 542 A.2d 123 appeal denied, 555 A.2d 116 (1988), the

court noted that an action for contribution "sounds in contract rather than tort law." Id. at 18, 542 A.2d at 125.[1]  Since Plaintiffs' claim for contribution or indemnity in this case actually arose on or before October 30, 1997, when Mayflower's claim arising from the underlying settlement with the University of Pennsylvania and the Tannens accrued by virtue of that settlement, Plaintiffs are therefore barred by the four year statute of limitations applicable to contrcts implied in law.  42 Pa. Cons. Stat. § 5525 n. 16.  Moreover, the six year statute of limitations in Pennsylvania for civil actions which are neither subject to another limitation nor excluded from the application of a period of limitation by § 5531 (relating to no limitation) is specifically inapplicable given the ruling in Nicholson, supra.  Discovery in the instant case has revealed that Mayflower, as well as its Claims Supervisors, were well aware of the alleged involvement of Defendant Household Movers Services as early as March of 1996, when the underlying claim was first made by the Tannens.  A claim for contribution or

---

[1]In Nicholson, the court ruled that the six year statute of limitations governed the claim for contribution presented in that case.  The action in Nicholson had accrued in 1977, however, prior to the effective date of the amendment to 42 Pa. Cons. Stat. Ann. § 5525 which established a four year statute of limitations period for actions based on contracts implied in law.  Moreover, in Nicholson the parties conceded that the six years statute of limitations applied, and almost eight years had passed between the accrual of the cause of action and the date the complaint was filed.  See General Accident, supra, at n.2.

indemnity accrues, and the statute of limitations begins to run on such a claim,

when a judgment is entered in favor of the plaintiff in the original action.  See

Pennsylvania National Mutual Casualty Ins. Co. v. Nicholson Construction Co.,

374 Pa. Super. 13, 19, 542 A.2d 123, 126; Hughes v. Pron, 286 Pa. Super. 419,

426, 429 A.2d 9, 12 (1981).  In this case, the underlying claim against Mayflower,

which serves as the basis for the instant subrogation action, was dismissed by

virtue of Rule 41.1(b) on October 30, 1997, after the underlying case was settled.

Accordingly, the statute of limitations on Mayflower's claim for contribution or

indemnity against Household began to run on the same date, October 30, 1997.

Since this action was not filed until May 6, 2002, Mayflower's claim for

contribution or indemnity is barred by the four year statute of limitations and

Defendant Household Movers Services is entitled to judgment as a matter of law.

A claim for contribution or indemnity does not mature until there is a final

adjudication of a party's liability and the party has paid more than his or her pro

rata share of the judgment.  See Stahl v. Ohio River Co., 424 F.2d 52, 55 n.3

(citing Fed. R. Civ. p. 13) (3d Cir. 1970).  Until such time, a claim for contribution

or indemnity is considered to be "contingent," and the only procedure by which an

original defendant is permitted to assert a contingent claim (such as a claim for

contribution or indemnity) is by bringing into the suit "a person not a party to the

7

action who is or may be liable to him," pursuant to the Fed. R. Civ. P. § 14(a).  See

Barnes v. Maumee Express, Inc., et al., 2003 WL 21659176 (E.D. Pa.).  Plaintiff

Mayflower certainly could have joined Household Movers Services as a third

party defendant pursuant to F. R. Civ. P. 14(a) in the underlying suit if they felt

they had a contingent claim against them for contribution or indemnity once the

underlying Tannen claim arose.  Since Discovery has shown that Mayflower's

own Claim Department clearly felt they had a claim against Defendant Household

Movers Services as early as March 1, 1996, the question arises as to why

Mayflower failed to join Household in the underlying action, and why instead, St.

Paul and/or Mayflower,  settled the underlying action and filed an Order of

Dismissal on October 30, 1997, and then waited some 4 and one half  years to file

the instant subrogation action for contribution and indemnity?

     In the case of General Accident Fire & Life Assurance Corp., Ltd. v. I.T.T.

General Corporation, et al., an Eastern District of Pennsylvania Court case very

similar on the facts, the Court ruled that a subrogated claim for indemnity or

contribution by an insurance carrier is an assertion of the right of its insured

against alleged tortfeasors.  The General Accident case arose from an underlying

case in which Stanley Masztak was allegedly injured in 1969 by an explosion of

an oil burner heating unit, and subsequently instituted an action in the Philadelphia

Court of Common Pleas against six defendants, including the Louis Nardello Co.

A judgment was entered in that case in favor of Masztak and against Nardello in

1983.  Nardello then initiated an action against General Accident seeking a

declaration of its rights by virtue of an insurance policy existing between Nardello

and General Accident.  When judgment was entered in favor of Nardello and

against General Accident, General Accident was required to indemnify Nardello

for the amount recovered by Masztak.  Thereafter, General Accident paid Nardello

the sum of $630,142.21.  General Accident then sought to recover the same

amount ($631,142.21) from I.T.T. General Corporation and Electronics Corp. of

America alleging that the oil burning heating unit which exploded and injured

Masztak contained component parts manufactured by I.T.T. and ECA, and that

these components were defectively designed and caused the explosion and injury.

Defendants in the General Accident case filed a motion for summary judgment

contending that General Accident's claim was barred by the applicable statute of

limitations contending that the General Accident claim was properly characterized

as a claim of subrogation to the rights of its insured, Nardello.  ITT further

contended that Nardello's claim against ITT and ECA was really a claim for

contribution, based on the theory that ITT and ECA were joint tortfeasors, or for

indemnity.  Lastly, ITT contended that the underlying claim of Nardello for

9

contribution or indemnity accrued when the judgment was entered against Nardello on June 16, 1983.

Since General Accident did not file their Complaint against ITT and ECA until August 23, 1988, or over five years after the underlying claim accrued, General Accident's claim was barred pursuant to either the two year or four year Pennsylvania Statute of Limitations according to defendants ITT and ECA. The Eastern District of Pennsylvania Court granted defendants' motion for summary judgment holding that the statute of limitations on General Accident's claim for contribution or indemnity actually arose on June 16, 1983, and accordingly, General Accident's claim was barred by the four year statute of limitations applicable to contracts implied in law. 42 Pa. Cons. Stat. Ann. § 5524(4) (Purdons 1981).

Likewise, in the instant case before this Court, Mayflower's claim against Household certainly accrued prior to the date that the Rule 41.1(b) Order of Dismissal was filed by Mayflower in the underlying case where the University of Pennsylvania and Dr. Richard Tannen sued Mayflower, requesting damages in excess of $700,000 (see Exhibit "B") arising from Mayflower's alleged negligence in connection with the move of the Tannens' household goods from Los Angeles to the Philadelphia area by Mayflower. As in the General Accident case,

10

Mayflower is subject to whatever defenses Household Movers Services would have had against the University of Pennsylvania and the Tannens in the underlying suit.

The general rule in Pennsylvania is that the statute of limitations begins to run as soon as a right to institute and maintain suit arises. Crouse v. Cyclops Industries, 745 A.2d 606, 611 (Pa. 2000). Accordingly, Mayflower's right to institute and maintain suit against Household Movers Services by virtue of their settlement of the underlying claim brought against them by the University of Pennsylvania and the Tannens certainly accrued earlier than, and certainly **no later than October 30, 1997,** when Mayflower filed the Rule 41.1(b) Order of Dismissal in the underlying case. There is no issue of Mayflower not being aware of a possible cause of action against Household Movers Services, by virtue of deposition testimony of the former Claim Manager of Mayflower attesting to the fact that Mayflower was aware of alleged potential liability of Household with respect to the underlying Tannen claim as early as March of 1996, therefore the Discovery rule is not applicable.

## III.    CONCLUSION

Pennsylvania law is clear that the statute of limitations governing a subrogated claim for indemnity or contribution is the four year statute applicable to contracts implied in law.  42 Pa. Cons. Stat. Ann. §5525(4) (Purdons 1981).  All of the evidence in the present case indicates that Plaintiff Mayflower was aware of the potential alleged negligence of Defendant Household Movers Services as early as March of 1996, when the original Mayflower shipment of the underlying moved goods was rejected by Dr. and Mrs. Tannen.  After settling the underlying claim brought by the University of Pennsylvania and the Tannens, and after an Order of Dismissal pursuant to Rule 41.1(b) was filed with this Court on October 30, 1997, the Plaintiff Mayflower then waited some four and a half years to file the instant claim for contribution, which is essentially a claim for subrogation made by Mayflower's insurance carrier, St. Paul Insurance Company.

Under these facts, Mayflower's claim for contribution, indemnity and unjust enrichment is time barred, as it was filed more than four years after Mayflower's cause of action against Household originally accrued.

As there are no genuine issues of material fact between the parties, Defendant Household Movers Services respectfully requests that this Honorable

Court grant Household Movers Services Motion for Summary Judgment and enter

an Order dismissing all claims against Household Movers Services with prejudice.

Respectfully submitted,

**DEASEY, MAHONEY & BENDER, LTD.**


BY:_____

      JOHN M. DONAHUE, ESQUIRE
      Attorney for Defendant,
      Household Movers Services
      I.D. No. 27268
      1800 J.F.K. Boulevard, Suite 1300
      Philadelphia, PA 19103
      215-587-9400

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Defendant, Household Movers Services',  Motion for Summary Judgment and Memorandum of Law in support thereof was caused to be sent via First Class Mail, postage prepaid by the undersigned on the date stated below, to the addressees stated below and at the addresses stated below:

Michael P. Creedon, Esquire
Creedon & Feliciani, P.C.
29 E. Marshall Street
Norristown, PA 19401

**DEASEY, MAHONEY & BENDER, LTD.**

BY:_____
        JOHN M. DONAHUE, ESQUIRE
        Attorney for Defendant,
        Household Movers Services
        I.D. No. 27268
        1800 J.F.K. Boulevard, Suite 1300
        Philadelphia, PA 19103
        215-587-9400